**JONES v. W. N. REYNOLDS & SON.**
**No. 4687.**

Court of Appeal of Louisiana. Second Circuit.
March 29, 1934.

Shotwell & Brown, of Monroe, for appellant.

Scarborough & Barham, of Ruston, for appellee.

TALIAFERRO, Judge.

Plaintiff and defendant, represented by its agent, A. Hendrix, entered into a contract whereby plaintiff sold to defendant all of the timber on his lands in Lincoln parish, La., suitable for pulpwood. The timber was to be paid for weekly, as cut. Converting the trees into logs of proper length and sizes was the task of defendant. The contract was not reduced to writing; hence this controversy. It is plaintiff's contention that Hendrix agreed to pay him 50 cents per cord for the wood, while Hendrix and defendant contend that the agreed price was 10 cents per pen 6 feet high. It was not contemplated by the parties that the wood should be assembled in heaps containing one or more cords, but would be arranged in square pens 6 feet high. This course was followed until plaintiff had been paid for 4,411.5 pens, part of which he had cut for defendant at a stipulated price. He now contends that, when he and Hendrix made the contract, he was assured by him that it took 5 pens of the wood 6 feet high to make a cord, and that, when he learned this was not true, he declined to accept further payments on the pen basis, and then instituted this suit. He seeks to recover judgment for over $600, the alleged balance due him on the wood accepted by defendant at the rate of 50 cents per cord.

Defendant's position is that the agreed price for the wood was 10 cents per pen 6 feet in height, without qualification, and argues that plaintiff so understood the contract because he accepted its checks in payment of the price of wood, aggregating $441.15, in the face of each of which was written that it was issued in payment of a certain number of pens of wood at 10 cents per pen. Defendant also avers that Hendrix had no authority, in fact was expressly forbidden, to buy pulpwood on a cordage basis. It is admitted by defendant that, when this suit was filed, there was due to plaintiff $15.80 for 158 pens of wood, and this amount, plus the

amount of court costs to the time of tender, was tendered to plaintiff, and, on his refusal to accept same, the two amounts were deposited in the registry of the court.

The lower court gave plaintiff judgment for $160.04, and defendant appealed.

It is certain that at time the contract under consideration was executed, and for a year or more prior thereto, defendant was not buying pulpwood on a cordage basis. Very good reasons are assigned for the adoption of such a rule, the main one being that, when you purchase the wood in pens, at a glance you see the kind and quality of material you are getting; whereas this cannot be done if it is corded. Hendrix knew that this was his principal's rule. He is positive he did not violate it when he dealt with plaintiff, insisting that he only agreed to pay him 10 cents per pen for his timber. The fact that plaintiff accepted its checks with information written therein that he was being paid on the basis of pens and not cords certainly indicated to defendant that there was no misunderstanding as to the price basis for the wood.

■ However, pretermitting the question of whether Hendrix was invested with power to buy this wood on a cordage basis, under his general authority to buy such wood for defendant's account, and admitting that Hendrix agreed to pay plaintiff 50 cents per cord for the wood, for plaintiff to recover any amount in this suit, except that admitted to be due him, he is required to establish with legal certainty the number of cords there were in the 4,411.50 pens delivered to defendant. We do not think this has been done; nor do we think it can be done. To illustrate the uncertainty that enters into the proposition, we refer to plaintiff's own solemn allegations wherein he says that the wood delivered to defendant was equal to 2,222 cords, while the trial judge found that only 1,142.37 cords had been delivered. In a painstaking opinion the judge of the lower court undertakes to elucidate the maze of controverted facts and conflicting testimony bearing upon this question, and, inter alia, says:

"To reach a conclusion as to the amount that defendant now owes plaintiff it is necessary to find the number of cords of wood that have been cut from plaintiff's land. Under the evidence in this case, the number of cords depends upon the average diameter of the wood, the number of sticks in a pen, the number of pens, and the number of pens in a cord.

"The testimony is conflicting as to the average diameter of the wood. A finding on this point can be no more than a guess or an estimate."

He is eminently correct in these observations.

■ The testimony of several men who have had many years' experience in buying, handling, and selling pulpwood is to the effect that from the average run of timber it requires 5 pens 6 feet high to make a cord of 128 cubic feet. We think the testimony on the subject fairly well establishes that plaintiff's timber could properly be classed as average timber for pulpwood purposes. It is shown that the smaller the timber the more pens are required to equal a cord, and that the larger the trees are the fewer pens are required to make a cord. Some of plaintiff's timber was small, some of medium size, and some of the larger class. It is impossible to ascertain what percentage of each class was involved in that delivered to defendant. The record leaves no doubt in our minds that it is humanly impossible to check back and ascertain, with any degree of certainty, the cordage delivered to defendant. So many elements of uncertainty and indefiniteness enter into the question that evidence thereon has little or no probative value. Plaintiff has not made out his case.

Estoppel is not pleaded against plaintiff, but, as an equitable proposition, plaintiff, by accepting defendant's checks over a period of time in payment of the timber on a pen basis, certainly lulled defendant into a confirmed belief that Hendrix had not exceeded his instructions in trading with plaintiff, and thereby prevented defendant from repudiating the ultra vires acts of its agent, if such there were.

For the reasons herein assigned, the judgment appealed from is amended by reducing the amount thereof to $15.80, and casting plaintiff for all costs accruing since tender by defendant, and casting defendant for all costs prior to tender; and dissolving and setting aside the writ of sequestration sued out herein.